IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FREDERICK RIVERS, #148197,      )
                                )
              Plaintiff,         )
                                )
vs.                             ) CIVIL ACTION NUMBER
                                ) 2:08-CV-24-WKW-TFM
CONNIE BEDSOLE, et al.,          )
                                )
              Defendants.        )


## SPECIAL REPORT

Come now the Alabama Department of Corrections Defendants,
Richard Allen, J. C. Giles, Ernie Marshburn, and Connie Bedsole, by and
through the undersigned counsel in the above styled action, and file
this their Special Report as follows. The Plaintiff names one Linda
Floyd, MD, in his complaint but counsel for the ADOC Defendants does
not represent "Linda Floyd, MD" and does not know if service has been
perfected.

## Petitioner's Allegations

Plaintiff alleges that his constitutional rights were violated by the
Defendants, specifically that he was discriminated against on the basis

1

of race and that he was somehow wrongfully removed from the Crime Bill drug treatment program at the Ventress Correctional Facility. He claims to have suffered "mental anguish" as a result of this action. The basis of the Plaintiff's claims center around the Substance Abuse Program at Ventress and alleges violations of the Eighth and Fourteenth Amendments.

## DEFENSES

The Defendants deny that they have violated the constitutional rights of the Plaintiff and demand the strict proof thereof.

The Defendants allege that the Plaintiff has failed to state a claim upon which relief can be granted.

The Defendants allege that the Plaintiff has failed to state a claim upon which a 42 U.S.C. § 1983 action can be maintained against at least some of the Defendants if not all.

The Defendants allege that at least part of the Plaintiff's claim is based upon the theory of respondeat superior and cannot be maintained under 42 U.S.C. § 1983.

The Defendants plead the general defense.

The Defendants allege that they are entitled to qualified

immunity against the claims of the Plaintiff.

The Defendants allege that they are entitled to absolute immunity against the claims of the Plaintiff.

The Defendants allege that the Plaintiff's claims are barred by the Prisoner Litigation Reform Act (PLRA).

The Defendants allege that the Plaintiff suffered no injuries, and/or damages, as a result of the alleged violations.

The Defendants reserve the right to amend their defenses, including the addition of affirmative defenses, upon the receipt of information through discovery and otherwise.

## STATEMENT OF FACTS

Plaintiff was an inmate incarcerated at the Ventress Correctional Facility. He is in ADOC custody as a result of a Possession of a Forged Instrument conviction out of Escambia County, Alabama. In the sentencing order, Judge Brogden ordered that the Plaintiff be enrolled in the most intense and longest term substance abuse program available. (Marshburn's Affidavit, Exhibit "1-A"). In October 23, 2006, the Plaintiff was enrolled in the Crime Bill drug treatment program, which is the most intense and longest term substance abuse program

available. On February 9, 2007, the Plaintiff was removed from the program as a result of his negative behavior. (Marshburn's Affidavit, Exhibit "1-D"). He was at that time told that he could re-enter the program after July 15, 2007, because he had actually completed Phase I and was discharged while in Phase II. On the same day that he was discharged from the program, the Plaintiff requested a "form for treatment failure" and stated that he was "not taking no more SAP program, I refuse any more". (Marshburn's Affidavit, Exhibit "1-E"). On March 6, 2007, the Plaintiff agreed to re-enter Phase II on July 16, 2007. (Marshburn's Affidavit, Exhibit "1-J"). But when July 16, 2007, arrived the Plaintiff again refused to participate in the program. (Marshburn's Affidavit, Exhibit "1-K"). At one point in the process the Plaintiff alleged that he was medically unable to participate in the program, so Defendant Marshburn checked with the Health Care Unit to ensure that the Plaintiff's medical condition would allow him to complete the program. Defendant Marshburn is not the only ADOC Defendant who dealt with the Plaintiff. Defendant Bedsole was the Plaintiff's assigned Drug Program Specialist. Right after entering the program in October of 2006 and through the time of discharge from the program, the

4

Plaintiff submitted a medical profiles, which were honored by the Crime Bill staff. (Exhibit 2 - Bedsole's Affidavit).

In his race discrimination claim the Plaintiff proffers a comparator, an inmate named Jerry Macon. Rivers claims that he was discharged from the program from rules violation, but Macon also had rules violations and was not discharged. This simply is not true. (See Exhibit 1 - Marshburn's Affidavit and Exhibit 2 - Bedsole's Affidavit).

## ARGUMENT

### Eighth Amendment

The Eighth Amendment, which applies to state action through the Due Process Clause of the Fourteenth Amendment, Robinson v. California, 370 U.S. 660, 666, (1962), prohibits the infliction of "cruel and unusual punishment" on those convicted of crimes. Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991). As a threshold matter, the court must determine whether the subject deprivation was sufficiently serious to rise to the level of denying "the minimal civilized measure of life's necessities." Rhodes v.Chapman, 452 U.S. 337, 347 (1981). Thus, in order to determine whether there were violations of the Plaintiff's Eighth Amendment rights, the court must find that the plaintiff was

deprived "of the minimum civilized nature of life's necessities", and that the defendants were deliberately indifferent to the rights of the plaintiff. Wilson; Rhodes. The Plaintiff's complaint alleges that he was removed from the Crime Bill SAP. Even if taken as a true fact such would rise to a constitutional deprivation. It is undisputed that SAP at ADOC is a privilege, not a right nor a 'life's necessity'. The law is well established in this circuit that  there is no liberty interest in SAP, therefore Sandin v. Conner, 115 S.Ct. 2293 (1995) applies.  ( Also see Wolff v. McDonnell, 418 U.S. 539 (1974) and Superintendent v. Hill, 472 U.S. 445 (1985)).  The Plaintiff appears to try to cover that problem by saying that his removal was based upon race. The Plaintiff offers nothing to support that allegation. The ADOC Defendants proffer evidence that directly contradicts that allegation. The Plaintiff's comparator is an inmate named Jerry Macon, AIS #247521. Macon was discharged from Crime Bill SAP on January 29, 2007, for negative behavior.(Exhibit 1 - Marshburn's Affidavit, Exhibit "1-L"). Inmate Macon was offered the same opportunity as the Plaintiff to return to Phase II on or about July 15, 2007. Unlike the Plaintiff, Inmate Macon returned to Phase II on July 16, 2007, and graduated from the program on

November 9, 2007. (Marshburn's Affidavit, Exhibit "1-M").

The Plaintiff claims that as a result of being removed from the program, he was denied "placement of less restrictive facility; denied less intens (sp) program regardless of health problems that could be life threatening." The law of this Circuit is well established that inmates have no constitutional right to any particular classification, custody, and/or placement in any facility.  The Plaintiff has failed to overcome the essential burden of establishing that there is a genuine issue of material fact to avert summary judgment. Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).  It is especially relevant that the Plaintiff has alleged no specific injury, except that he alleges to have suffered "mential anguish", (sic) to himself from the alleged violation.  Certainly there can be no argument that the removal was a result of injury (even "mental anguish") where there was no injury.  The Plaintiff's complaint does not specifically allege how these alleged removal harmed him or undermined his health or physical well-being.

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between actions taken by the defendants and the constitutional deprivation.  Jones v. Preuitt & Mauldin, 851 F.2d 1321

(11th Cir. 1988). The requisite causal connection may be shown by the personal participation of a defendant, a policy or custom established by the defendant which results in deliberate indifference to a prisoner's constitutional rights or breach of a duty imposed by state or local law which results in constitutional injury. Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986). There is no causal connection even alleged here, much less proven.

## PLRA

Lastly but certainly as important, the ADOC Defendants would argue that this action is due to be dismissed and summary judgment granted under the Prison Litigation Reform Act (PLRA), specifically under 42 U.S.C.A. s 1997e(e). In Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997), the Court held that the inmate did not raise a valid Eighth Amendment claim because he did not have the requisite "physical injury" under the PLRA. Mental anguish will not support the requisite physical injury.

In support of this pleading, the ADOC Defendants supply the Court with the affidavits with attachments of J. C. Giles (Exhibit 4), Ernie Marshburn (Exhibit 1), Connie Bedsole (Exhibit 2) , and Rebecca

8

Pittman (Exhibit 3).

Wherefore the premises considered and there being no material issue of fact, the ADOC Defendants request that summary judgment be granted in their favor and that cost be assessed against the Plaintiff. Defendants further request that this action be found to be frivolously brought, under the definition contained in the Prisoner Litigation Reform Act.

Respectfully submitted,

Kim T. Thomas(THO115)
General Counsel
Deputy Attorney General

/s/ Albert S. Butler
Albert S. Butler (BUT016)
Assistant General Counsel
Assistant Attorney General

OF COUNSEL:

Alabama Department of Corrections
301 South Ripley Street
Post Office Box 301501
Montgomery, Alabama 36130-1501
(334) 353-3889

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing

pleading upon:

Frederick Rivers
AIS #148197
Ventress Correctional Facility
P. O. Box 767
Clayton, Alabama 36016

by placing same in the United States Mail, first class postage prepaid
and properly addressed this 19th day of February, 2008.

/s/ Albert S. Butler
Albert S. Butler (BUT016)
Assistant General Counsel
Assistant Attorney General

10

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FREDERICK RIVERS, #148197    )
                             )
        Plaintiff,           )
                             )
vs.                          )    CIVIL ACTION NO. 2:08-CV-24-WKW
                             )
CONNIE BEDSOLE, et. al.,     )
                             )
        Defendants.          )

## <u>A F F I D A V I T</u>

Before me, the undersigned authority, a Notary Public in and for said County

and State of Alabama at Large, personally appeared one Ernie Marshburn, who

being known to me and being by me first duly sworn, deposes and says on oath

as follows:

My name is Ernie Marshburn, and I am presently employed as a Drug

Program Supervisor, with the Alabama Department of Corrections at the

Ventress Correctional Facility in Clayton, Alabama.  I am over the age of twenty-

one (21).

Plaintiff, in his response states that he is being discriminated against racially.

He states he was dismissed from Crime Bill in February of 2007 for staff write

ups but allowed to return on 7-15-07 to the program.  He states that Inmate Jerry



DEFENDANT'S
EXHIBIT
*1*

Page 2
Affidavit – Ernie Marshburn

Michael Macon, W/M, #247521 received the same type staff write ups and was allowed to continue in the program.

Defendant responds to the allegations made by Mr. Frederick Rivers in this suit. I can say without reservation that there has been no hint of discrimination against Mr. Rivers or any other inmate here at Ventress Correctional Facility under my care for Drug Treatment. Further, let me state that I have no knowledge of any action of discrimination against Mr. Rivers or any other staff person under my supervision.

The record shows that the plaintiff was ordered by Honorable Judge, Joseph B. Brogden in the Circuit Court of Escambia County, Mobile, Alabama (Exhibit A) "To enroll... in the most intense and long term Substance Abuse Program available."

Inmate Frederick Rivers first arrived at Ventress on or about August 14, 2006 and soon afterwards I was notified by an interoffice memorandum that Mr. Rivers was here to for court ordered "Crime Bill" our six month Drug Treatment Program (Exhibit B) and on October 23, 2006, Rivers was enrolled in the program. (See Exhibit C, the Treatment History Print out from the DOC Mainframe. This screen records the fact of Mr. Rivers entry into treatment on the above date and his discharge suspension on February 9, 2007 for Rule Violations involving "Physically Pushing" another inmate. (Exhibit D) Mr. Marshburn's discharge note pointed out that Rivers would be eligible to return to the program after July

Page 3
Affidavit – Ernie Marshburn

15, 2007, since he had actually completed Phase I and was being discharged from Phase II.

After his discharge, Inmate Rivers sent a request (Exhibit E) to Mr. Marshburn for a refusal form stating, "I'm not taking no more SAP."

Mr. Marshburn sent the refusal form but Mr. Rivers did not return it. Instead he sent a request (Exhibit F) for a different substance abuse program. Mr. Marshburn responded explaining the need for the particular program involving Stress and Anger Management since this is inmate Rivers' fourth time in prison. On March 1, 2007, Mr. Rivers stating adamantly that he would not take any more SAP and threatened to file a federal lawsuit (Exhibit G). Mr. Marshburn did check Rivers' medical record and was assured that Mr. Rivers had no medical condition at that time which would prevent his full participation in any of our Drug Programs here at Ventress Correctional Facility.

Inmate Rivers' current medical profile (Exhibit H) is the same profile, which he had during his time in the Crime Bill Program and was fully honored by staff as Ms. Connie Bedsole, Drug Program Specialist in charge of the Crime Bill Program will attest to in her own affidavit.

On or about March 6, 2007, Mr. Marshburn received another request slip from inmate Frederick Rivers (Exhibit J) stating "you were correct in your order for me to complict Crime Bill"... and that he had been under a lot of stress with a newborn daughter and in short, stating his current readiness to re enter Crime Bill as directed. Mr. Marshburn explained again that (he) inmate Frederick Rivers

Page 4
Affidavit – Ernie Marshburn

was scheduled to return to the program on or about July 15, 2007. On or about

Monday, July 16, 2007, inmate Rivers did in fact refuse his court ordered

program (Exhibit K). I do not recall any further contact with Inmate Frederick

Rivers between July 16, 2007 and today's date of January 24, 2008.

    Inmate Frederick Rivers statement of facts was not factual and therefore did

not support but rather denied his claim of discrimination. While it is true that

inmate Jerry Macon, #247521 is Caucasian and it is true that he received write

ups, but it is **not** true that he was allowed to remain in the program. The record

shows inmate Macon's discharge by suspension from Crime Bill written up by

Drug Program Specialist Connie Bedsole on January 29, 2007, approved by Mr.

Marshburn on February 2, 2007 (Exhibit L) and offered the opportunity (same as

inmate Rivers) to return to Crime Bill Phase II on or about July 15, 2007. The

difference is and the false reporting starts with the idea that inmate Macon was

allowed to remain in the program. If Inmate Macon had not been discharged he

would have graduated on April 27, 2007. The truth is and the record shows that

Inmate Jerry Macon returned to Crime Bill at Phase II on July 16, 2007 and went

on to graduate on November 9, 2007 (Exhibit M).

    The above-related facts are the entirety of my involvement with inmate

Frederick Rivers regarding these allegations. I deny that I have violated any of

his constitutional rights.

_Ernie Marshburn_        _Date_

Page 5
Affidavit – Ernie Marshburn


STATE OF ALABAMA )

BARBOUR COUNTY  )

SWORN TO AND SUBSCRIBED BEFORE ME THIS 5th DAY OF FEBRUARY,

2008.

_____
Notary Public
My Commission Expires: 9-6-08

ACR359

AMENDED

ALABAMA JUDICIAL DATA CENTER
ESCAMBIA COUNTY
TRANSCRIPT OF RECORD
CONVICTION REPORT

27-21

CC 2001 000424.00 01
JOSEPH B. BROGDEN

CIRCUIT COURT OF ESCAMBIA COUNTY

COURT ORI: 030015 J

STATE OF ALABAMA          VS.
RIVERS FREDERICK              ALIAS:
10025-A MCLEOD ROAD          ALIAS:
MOBILE AL  36695

DC NO: WR 2001 000369.00
G J:  53
SSN:  421846003
SID:  000000000
AIS:  148197

DOB: 03/17/1966   SEX: M   HT: 6 02   WT: 235   HAIR: BLK   EYE: BRO
RACE: ( )W (X)B ( )O   COMPLEXION:              AGE:        FEATURES:

DATE OFFENSE: 04/27/2001   ARREST DATE: 05/01/2001   ARREST ORI: 0300000

CHARGES @ CONV        CITES            CT CL  COURT ACTION           CA DATE
POSS FORGED INSTR    13A-009-006      01 C   GUILTY PLEA            03/14/2002
                    307c              00                           00/00/0000
                                      00                           00/00/0000

JUDGE: JOSEPH B. BROGDEN   0334   PROSECUTOR: GODWIN MICHAEL D

PROBATION APPLIED   GRANTED  DATE        REARRESTED DATE  REVOKED  DATE
( )Y ( )N           (X)Y ( )N            (X)Y ( )N  5-16-06  (X)Y ( )N  08182006

15-18-8  CODE OF ALA 1975   IMPOSED    SUSPENDED    TOTAL      JAIL CREDIT
( )Y (X)N  CONFINEMENT:     10 00 000  00 00 000   10 00 000   00 02 002
           PROBATION :      00 00 000  00 00 000   00 00 000

DATE SENTENCED: 03/14/2002   SENTENCE BEGINS: 05/18/2006         667

PROVISIONS                  COSTS/RESTITUTION          DUE        ORDERED

PENITENTIARY                RESTITUTION              $332.00      $332.00
CONCUR SENT                 ATTORNEY FEE             $250.00      $250.00
HABITUAL OFDR               CRIME VICTIMS             $50.00       $50.00
                            COST                     $244.00      $244.00
AMENDED TRANSCRIPT          FINE                       $0.00        $0.00
                            MUNICIPAL FEES             $0.00        $0.00
BRecord                     DRUG FEES                  $0.00        $0.00
Served 1YR8mths = 605(PTS)  ADDTL DEFENDANT            $0.00        $0.00
        + 62                DA FEES                    $0.00        $0.00
       667(NJC)             COLLECTION ACCT            $0.00        $0.00
                            JAIL FEES                  $0.00        $0.00

                            TOTAL                    $876.00      $876.00

APPEAL DATE         SUSPENDED          AFFIRMED          REARREST
( )Y (X)N _____   ( )Y ( )N _____  ( )Y ( )N _____  ( )Y ( )N _____

REMARKS:
                            THIS IS TO CERTIFY THAT THE
                            ABOVE INFORMATION WAS EXTRACTED
                            FROM OFFICIAL COURT RECORDS
5/18/06 ORDER-PROB REVOKED & HE SHALL SERVE THE PRISON SENT OF INCAR
PREV IMP IN THIS CASE, LESS CREDIT FOR ANY TIME PREV SERVED. IT IF
ORDERED THAT DOC SHALL ENROLL PROB IN THE MOST INTE & LONG TERM SUB
ABUSE PROG AVAIL. /S/ JBB (ORDER ATTACHED)

148197B (23)                TAMIS K TAYLOR
OPERATOR: BET               06/29/2006
PREPARED: 06/29/2006

DEFENDANT'S
EXHIBIT
1-A

RECEIVED
JUL - 3 2006
CENTRAL R

Entered Terminals
_____  _____
(date)    (by)

**STATE OF ALABAMA**
**DEPARTMENT OF CORRECTIONS**
**Ventress Correctional Facility**
**Post Office Box 767**
**Clayton, Alabama 36016**

08/23/06

MEMORANDUM

FROM:    Rebecca Pittman, Classification Specialist

TO:    Alice Tanner, Administrative Support Assistant II

Re:    - Priority SAP Placement

Re:    Rivers, Frederick b/148197C  is a PRIORITY SAP for the following reasons:

_____    Pre-approved  Work Release

_____        Honor Camp after SAP

_____        Elmore/JOD after SAP

_____        Parole Rush

_xxxxx_____            Other  court ordered crimebill

Please schedule accordingly.



```
_____   DRUG  ABUSE  TREATMENT  HISTORY  (CDITP) ** PRODUCTION
 **
  23/JAN/2008      14:42:17     CDITP     718     043CLASS      CDITP01    40
6
------------------------------------------------------------------------------
--
AIS 00148197C   NAME RIVERS, FREDERICK                      RACE B      SEX
M
DOB 03/17/1966  INSTITUTION VENTRESS CORRECTIONAL CENTER    TIMES IN PROGRAM
01

            DATE         DATE
      INST  ENTERED      COMPLETED    COMPLETION TYPE      COMPLETION REASON

      ----  ----------  ----------   ------------------   ------------------
-
PRE/TRT: 043 08/14/2006 10/23/2006 A/ADMINISTRATIVE REMOV O/OTHER

CR/BILL: 043 10/23/2006 02/09/2007 F/FAILED               N/NOT FOLLOWING PLA
N

 8/WEEK:     00/00/0000 00/00/0000   /                         /

    T/C:     00/00/0000 00/00/0000   /                         /

CONT/RE:     00/00/0000 00/00/0000   /                         /

AFT/CRE:     00/00/0000 00/00/0000   /                         /

RELAPSE:     00/00/0000 00/00/0000   /                         /

REMARKS: QUIT C.B. ON 07/16/2007.
  _
```



*C.B.*



**Bob Riley**
GOVERNOR

*State of Alabama*
*Alabama Department of Corrections*
Ventress Correctional Facility
P. O. Box 767
Clayton, Alabama 36016



**Richard F. Allen**
COMMISSIONER

---

FROM: Drug Program Specialist, Dorm __D4__, Bed # __33A__

VIA:     Ernie Marshburn, MS, CADP, and Drug Program Supervisor

TO:     J.C. Giles, Warden III

REF:     Violation of Rules & Regulations

On this date, __2/9/07__ the following Inmate __Fredrick Rivens__,

AIS# __B148197__ received the following write-up:

Rule # __44__ for: You physically intimidating another
inmate by pushing him out of your alley with
your elbow. I admitted to this Violation. I is
suspended from Crime Bill.

This is inmate's: _____ of six   (6) write-ups
                          _____ of five   (5) write-ups
D/c 1st out       _____ of four  (4) write-ups
No SAP prior of AFRA ② of three (3) write-ups
To CB Phase       __2__ of two   (2) write-ups
7/15/07.  _____ of one  (1) write-ups
2/12/07
           __0__ more write-up(s) and this inmate will be terminated from the Substance Abuse Program.
                          **No Exceptions!!!**

_Fredrick Rivens_                              _Evelyn Green_
INMATE'S SIGNATURE                         COUNSELOR'S SIGNATURE

_Connie K Bedsole_
SPECIALIST'S SIGNATURE

DEFENDANT'S
EXHIBIT
1-D

INMATE REQUEST SLIP

ne _Frederick Rivers_ Quarters _D-4/334_ Date _2-9-07_

AIS # _148197_

( ) Telephone Call      ( ) Custody Change    ( ) Personal Problems
( ) Special Visit       ( ) Time Sheet        ( ) Other _Crime Bill Specialist_
                                                       _And the Drug supervisor_

Briefly Outline Your Request- Then Drop in Mail Box

I 'am Requesting A Form, For Treament Failure
I am not taking No more Sap program, I
refuse any more. I Need to sign a Treament Failure
Form.                      Frederick Rivers
                           AJS# 148197

                      To: MS. Bedsole Specialist
                      To: mr. Marshburn supervisor

Do Not Write Below This Line -- For Reply Only

Fred - Just write on the
Form why you are refusal
& sign it with an officer
or counselor signing as
your witness. return it to
me          Thanks!

Approved    Denied    Pay Phone    Collect Call

Request Directed To: (Check One)

( ) Warden                        ( ) Deputy Warden    ( ) Captain
( ) Classification Supervisor     ( ) Legal Officer- Notary    ( ) Record Office
                                      Public

N176

DEFENDANT'S
EXHIBIT
1-E

Mt.©
9/11/2008

**INMATE REQUEST SLIP**
HT-83A

4 8/18/06

me _Frederick Rivers_    Quarters ~~3-4 code B~~ Date _2-22-07_

AIS # _148197 C_

( ) Telephone Call        ( ) Custody Change        ( ) Personal Problems
( ) Special Visit         ( ) Time Sheet            (✓) Other _or send me a Refuse_

iefly Outline Your Request- Then Drop in Mail Box

_Marshburn, I tryed Crimebill, I can't Complete it beca use, I have had a head injuries, and being stressout or made Angry or upset, in Phase 2 of Crimebill, It's Call Angrmaument phase, make me have SEizures Yes, SIR, I have had A SEizures from being stre out and made Angry in Crimebill, my health want Alie me to Complete Crimbill, so if you would put me in something I can Complete, SAP or Do or DIE, so I don't have to Have SEizures to Complete, I wrote ms. Pettman Also. About this._

) Not Write Below This Line – For Reply Only

_FRED - THIS IS YOUR 4TH TRIP TO PRESON - So SAP IS NOT GOING TO HELP YOU - CRIME BILL IS STRESSFUL BECAUSE IT IS MAKING YOU THINK ABOUT AND FACE THINGS YOU DON'T WANT TO THINK ABOUT. BUT IF YOU CAN'T FACE THEM AND_

( ) proved    ( ) Denied    ( ) Pay Phone    ( ) Collect Call

_DEAL WITH THEM IN PRESON - How IN_

) quest Directed To: (Check One) _THE WORLD DO YOU EXPECT TO_

( ) Warden                ( ) Deputy Warden        ( ) Captain

( ) Classification Supervisor  ( ) Legal Officer- Notary    ( ) Record Office

_Do Better in ~~THE~~ THE FREE WORLD?_

_COVERS_



DEFENDANT'S
EXHIBIT
1-F

CONTINUED RESPONSE
TO RIVERS REQUEST
DATED 2/14/07.

You FAILED C/B 2/9/07 — you will
HAVE TO GO BACK TO PHASE II C/B
IN July OR SIGN THE REFUSAL
~~OR BRE SUDDEN you~~ You CAN
THINK ABOUT IT now AND WAIT

~~[crossed out]~~

'TIL LATER ~~[crossed out]~~ 'CAUSE
I'M TELLING you — C/B IS WHAT

you NEED IF you WANT TO STAY
~~HOME~~ WHEN you GET HOME!
~~[crossed out]~~        JUST DO IT!

~~[crossed out]~~        R. [signature]

~~[crossed out]~~
WRITE BACK AFTER July 1 IF you
WANT TO SIGN A REFUSAL.
                        (RA) 2/27/07

*Mth 3/17/08 C/o M. Marshburn Copy*

## INMATE REQUEST SLIP

me FREDERICK RIVERS    Quarters H    Date 03-01-07

AIS # 148197C

( ) Telephone Call        ( ) Custody Change        ( ) Personal Problems
( ) Special Visit          ( ) Time Sheet            ( ) Other _____

Please Send A Refuse. A.S.A.P

iefly Outline Your Request- Then Drop in Mail Box

Marshburn, I'm Not Signing my name on nothing else, To do with
A Program, In no way! Do I HAVE to File a Federal LAW
Sui't Against You, Because of my "Health!" I HAVE been
Shot in the Head, and Have Seizures when stressed or made
angry, I Can't do Crime bill. And my Lawery and Doctor will come
To Court with me, and say so, I take "Topmax For seizurs
I requested a program on Court, So I could have done it on
The street, But I did'nt turn myself In, I have been to
Prison 6 Times, and my Judge have never said do a Program
until I'Ask. So I'm Not Going to take No program, Never Iret

) Not Write Below This Line — For Reply Only

FRED —

BO my Guest — I JUST provide the
program For you, IF you don't want it
you certainly don't Grave to take it
— JUST Stay in + serve your sentence
( TTL you Fas on 9/07/08.

proved.        Denied        Pay Phone        Collect Call

WRITE Your Reason For Refund +
SIGN IT. WITH AN OFFICER

quest Directed To: (Check One)                    ( ) Captain
) Warden          ( ) Deputy Warden              ( ) Record Office
) Classification Supervisor  ( ) Legal Officer- Notary

SIGNING As you individ WITNESS + Return
IT To me,        Lin Rhu 3/17/08



# IDENTIFICATION OF SPECIAL NEEDS

NAME (PLEASE PRINT) _Rivers        Frederick_
                    LAST            FIRST          MI

DATE OF BIRTH  _3-17-66_           SS# _148 177_

① Housing Recommendations:

① Walking Cane
X 180 days
10-22-07 — 4-22-08

General Population _____   stay in bottom
Medical Observation Unit ____   bottom X 180 days
Lower Level/Lower Bunk ___ 10-22-07 — 4-22-08
Suicide Precautions _____
Special Watch (15 Minute Checks) ___ ④ no squatting
Isolation _____                        or bending X 180 d
Initiate Universal Precautions ___ 10-22-07 — 4-22-08
                                   10-22-07 — 4-22-08

② no lifting > 20 lbs
X 180 d.
10-22-07 — 4-22-08

③ Individual found to be:

④ Frail/Elderly

Nurse _MBann____  ____-22-07

X Frederick Rivers

GLF 1005        Original        Third Copy/Medical Unit

DEFENDANT'S EXHIBIT
1-A

INMATE REQUEST SLIP

Name Fredrick Rivers Quarters H1 83A Date 6 March 0

AIS # 148197 C

( ) Telephone Call     ( ) Custody Change     ( ) Personal Problems
( ) Special Visit     ( ) Time Sheet     ( ) Other_____

Briefly Outline Your Request- Then Drop in Mail Box

Mr Mashburn I find that you were correct in your order for me to Complit Crime Bill. Please let me explain at the time when you first reccomended this Program I was under great Emotion Stress. My New born (Daughter) was born Premature and supposely Blind. However I have dealt with these issues and I now ready to undergo treatment. thank you for consideration.

Do Not Write Below This Line – For Reply Only

F RR –
you are set up to go
back to C/B phase II
after 7/15/07.

Approved     Denied     Pay Phone     Collect Call

3/9/07

Request Directed To: (Check One)

( ) Warden     ( ) Deputy Warden     ( ) Captain
( ) Classification Supervisor     ( ) Legal Officer- Notary Public     ( ) Record Offic

N176

DEFENDANT'S EXHIBIT
1 - J
Blumberg No. 5114



**STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS**

**BOB RILEY
GOVERNOR**

**RICHARD ALLEN
COMMISSIONER**

## INMATE <u>REFUSAL</u> TO PARTICIPATE

### READ THIS PAPER CAREFULLY!

It explains the possible benefits of successfully completing treatment programs and your right to refuse treatment.

All treatment programs sponsored at **Ventress** **Correctional Center** are STRICTLY VOLUNTARY. ALL INMATES HAVE THE RIGHT TO REFUSE TREATMENT. You are NOT required to participate in any treatment programs offered. Even after a program is begun and you decide to withdraw, you may do so.

Successful completion of treatment programs or refusal to participate in such treatment programs is recorded in your institutional records. <u>The Parole Board reviews these records before a Parole Hearing is held.</u> Successfully completing treatment programs may improve your chances for parole.

TREATMENT BEDS ARE FOR INMATES WHO WANT TREATMENT ONLY
Successfully completing treatment can lead to possible eligibility for the following:

| | |
|---|---|
| A – Reduced Custody | D – Honor Camp |
| B – Work Release | E – Leaves or Passes |
| C – S.I.R. Program | F – Other Desirable Programs |

Refusing to participate does not automatically prevent you from being considered for these programs. You will be given appropriate consideration for them as provided by the DEPARTMENT OF CORRECTIONS POLICIES, PROCEDURES, AND REGULATIONS.

I, **FREDERICK RIVERS** wish to refuse the (check one)

✔ Crime Bill Drug Treatment Program          ✔ Continuing Aftercare Residence Program

✔ Intensive Substance Abuse Program          ✔ Therapeutic Community

✔ Relapse Treatment

being offered at **Ventress** Correctional Center . I have read or have read to me the Inmate Participation agreement and I understand what it says. I realize that my refusal to participate in treatment does not automatically prevent me from being considered for other Department of Corrections programs.

_Frederick Rivers_    148492  7-16-07
**Inmate Signature, AIS#, and Date**

_Connie H. Bedsole_  7/16/07
**Treatment Counselor and Date**

INMATE REFUSED TO SIGN _____ (STAFF MUST INITIAL)

Tx Form #2
08/01/06

**TF#2.1**

DEFENDANT'S EXHIBIT
Z.K



### State of Alabama
# Alabama Department of Corrections
Ventress Correctional Facility
P. O. Box 767
Clayton, Alabama  36016



**BOB RILEY**
GOVERNOR

**RICHARD F. ALLEN**
COMMISSIONER

FROM: Drug Program Specialist, Dorm **D4** , Bed # **12A**

VIA:     Ernie Marshburn, MS CADP, and Drug Program Supervisor

TO:      J.C. Giles, Warden III

REF:    Violation of Rules & Regulations

On this date, **1/29/07** the following Inmate **Jerry Macon** ,

AIS# **W247521** received the following write-up:

Rule # **26** for: Disturbing/disruptive behavior evidence by getting up out of Prospect chair, throwing sign in box and went and laid down on his bed. and also talking and showing pictures to another inmate while on his negative behavior contract. Macon is suspended from Program.

This is inmate's: _____ of six  (6) write-ups
D/C VIA suspension _____ of five  (5) write-ups
From phase II CB _____ of four  (4) write-ups
may return to P.II CB **3** of three  (3) write-ups
after 4/14/07 Sylvia _____ of two  (2) write-ups
after _____ of one  (1) write-ups

more write-up(s) and this inmate will be terminated from the Substance Abuse Program.
**No Exceptions!!!**

_____
INMATE'S SIGNATURE

_____
COUNSELOR'S SIGNATURE

_____
SPECIALIST'S SIGNATURE

DEFENDANT'S EXHIBIT
1-L

```
                        |  DRUG  ABUSE  TREATMENT  HISTORY  (CDITP) ** PRODUCTION
 **
   24/JAN/2008      10:38:51     CDITP     718     043CLASS     CDITP01     40
6
-----------------------------------------------------------------------
--
AIS 00247521    NAME MACON, JERRY MICHAEL                    RACE W      SEX
 M
DOB 03/17/1966  INSTITUTION VENTRESS CORRECTIONAL CENTER    TIMES IN PROGRAM
01

               DATE        DATE
         INST  ENTERED     COMPLETED     COMPLETION TYPE      COMPLETION REASON

         ----  ----------  ----------    ------------------   ------------------
-
PRE/TRT: 043 08/17/2006 10/23/2006 A/ADMINISTRATIVE REMOV O/OTHER

CR/BILL: 043 05/14/2007 11/09/2007 G/GRADUATION          O/OTHER

 8/WEEK:     00/00/0000 00/00/0000  /                        /

    T/C:     00/00/0000 00/00/0000  /                        /

CONT/RE:     00/00/0000 00/00/0000  /                        /

AFT/CRE:     00/00/0000 00/00/0000  /                        /

RELAPSE:     00/00/0000 00/00/0000  /                        /

REMARKS: RETURN TO PHASE II ON 07/13/2007.
 —
```

DEFENDANT'S
EXHIBIT
#-M

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FREDERICK RIVERS, #148197          )
                                   )
          Plaintiff,               )
                                   )
vs.                                )  CIVIL ACTION NO. 2:08-CV-24-WKW
                                   )
CONNIE BEDSOLE, et. al.,           )
                                   )
          Defendants.              )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared one Connie Bedsole, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Connie Bedsole, and I am presently employed as a Drug Program Specialist, with the Alabama Department of Corrections at the Ventress Correctional Facility in Clayton, Alabama. I am over the age of twenty-one (21).

Plaintiff, in his response states that he is being discriminated against racially. He states he was dismissed from Crime Bill in February of 2007 for staff write ups but allowed to return on 7-15-07 to the program. He states that Inmate Jerry Michael Macon, W/M, #247521 received the same type staff write ups and was allowed to continue in the program.

DEFENDANT'S
EXHIBIT
2

Page 2
Affidavit – Connie Bedsole

Frederick Rivers, #148197 entered Crime Bill on October 23, 2006. He was interviewed on October 12, 2006 by Drug Treatment Counselor, Evelyn Green. Inmate Rivers was assigned to Ms. Green's group. During that Pre-SAP interview, inmate Rivers stated he had no physical problems that might cause him difficulty in the program. On October 25, 2006, inmate Rivers presented to staff a medical profile for an Albuteral inhaler; no prolonged standing for more than 15 minutes (9-14-06 to 12-14-06); light duty for 14 days, no heavy lifting more than 20 pounds and a bottom bunk profile. On November 1, 2006, inmate Rivers presented an updated profile for no lifting greater than 20 pounds from November 1, 2006 through May 1, 2007. All profiles were honored by Crime Bill staff.

Inmate Rivers received his first write up on November 3, 2006 for Rule Violation #29, "Negative Behavior." Inmate Rivers was dishonest with staff and took it upon himself to monitor the behavior of other inmates.

On November 30, 2006, Inmate Rivers reported to staff that he was taking pain medication, sinus medication, seizure medication and a stomach medication. Inmate Rivers was given permission to "stand up" when in-group or a structure activity when he felt sleepy.

Inmate Frederick Rivers began Phase II of Crime Bill on January 2, 2007.

On January 4, 2007, Inmate Rivers presented a profile for no prolonged standing more than 15 minutes. This profile was effective December 29, 2006 through March 29, 2007. On January 8, 2007, Inmate Rivers was informed that

Page 3
Affidavit – Connie Bedsole

due to his profile, he would receive <u>writing assignments</u> for any "bed inspection violation".  Other inmate's have to make and remake their beds for one hour for this violation.

On January 26, 2007, inmate Frederick Rivers refused Crime Bill.  He turned in his books to staff and stated he was quitting the program.  This refusal was handled by his assigned counselor, Ms. Evelyn Green.  Inmate Rivers later returned to the office on this date requesting to come back into the program because he stated he was going through problems with his girlfriend and that he made an irrational decision to quit the program.  After talking with Drug Program Supervisor, Ernie Marshburn, a decision was made to allow inmate Rivers a chance to stay in the program.  The signed refusal was torn-up by staff and inmate Rivers was placed back in the program.

On January 29, 2007, inmate Frederick Rivers was issued a write up by Drug Treatment Counselor, Ms. Evelyn Green for Rule Violation #26, "Disturbing/Disruptive Behavior" as evidenced by Inmate Rivers arguing with another inmate in the dorm.

On February 6, 2007, inmate Rivers reported that the muscles in his back were tightening up as he was sweeping in the dorm.  The incident was reported to the Shift Commanders.  The Shift Commander sent him to HCU.  A lay-in was given to Inmate Rivers by the Health Care Unit staff.  Treatment Staff honored the lay-in by allowing inmate Rivers to lay in.  His groups, dorm jobs and other

Page 4
Affidavit – Connie Bedsole

structure activities were waived while inmate Rivers was on lay-in. Inmate Rivers

reported that he was to return to HCU on February 8, 2007.

On February 9, 2007, inmate Frederick Rivers reported to the office stating

that another inmate would not move out of his way when he needed to go to the

restroom. According to Inmate Rivers, the other inmate was in Rivers' alley. The

incident was investigated and it was found that Inmate Rivers had stated that he

could not live in the dorm with the other inmate. Inmate Rivers was called back

to the staff office. Inmate Rivers stated to staff that he could not live in the dorm

with the other inmate. The incident was reported to the officer assigned to the

dorm. Both inmates were sent to the Shift Commander's office by the officer.

Upon returning from the Shift Commander's office, inmate Rivers stated to staff

that he had pushed the other inmate out of the way. Due to his own admission of

putting his hands on another inmate, Inmate Rivers was suspended from the

program for Rule Violation #44. This rule states, "any inmate who verbally

threatens, intimidates or engages in a physical confrontation with any other

inmate will be terminated from the Crime Bill Program." Inmate Rivers was

informed that he would be eligible to return to Phase II in the next program.

Inmate Rivers returned back to Crime Bill at the beginning of Phase II on July

12, 2007.

On July 16, 2007, Inmate Rivers sent a statement to staff stating that this

program would be detrimental to his health. Inmate Rivers was asked how the

program is detrimental to his health when all HCU profiles have been honored by

Page 5
Affidavit – Connie Bedsole

the program.  Staff had given Inmate Rivers permission to sit in a chair during PT

and his job duties had been changed by staff.  His duties were changed to "hour

man".  The hour man's job is to push a dust mop for approximately five minutes

each hour.

Drug Program Supervisor, Ernie Marshburn was notified about the situation

and a copy of the statement from Inmate Rivers was given to him.  Mr.

Marshburn stated that he had talked with Health Care Unit and they report there

was no medical reason that Inmate Rivers could not complete the Crime Bill

Program.

On July 16, 2007, Inmate Rivers was issued a write-up and counseled for

Rule Violation #29, Negative Attitude for a situation that occurred on July 14,

2007 at approximately 2:20 p.m., Rule #29 states, "any inmate who continually

maintains a negative attitude, who fails to cooperate or conform to the treatment

process will be counseled.  If improvement is not made immediately, he will be

terminated."  Inmate Rivers had gone to the intern's bed dropped his books on

the floor and stated out loud in the dorm that he quit the program.  All inmates

who quit the program when staff is not present are given the opportunity to take

the staff write-up instead of being issued a Refusal to Participate.  Inmate Rivers

was called to the office on July 16, 2007 and issued the write-up.  He signed the

write-up and left the office.  In a few minutes, Inmate Rivers returned to the office

and laid his books on staff desk stating, "I'm not feeling it."  At that time Inmate

Rivers signed a Refusal to Participate after staff read the refusal to him.

Page 6
Affidavit – Connie Bedsole

Later in the day of July 16, 2007, Inmate Rivers returned to staff office stating he wanted to take back the Refusal to Participate he had earlier signed. Inmate Rivers was informed that the refusal had been sent to the Administrative Staff for processing. Inmate Rivers was told staff would talk to Drug Program Supervisor, Ernie Marshburn concerning the situation. Mr. Marshburn stated that since he had previously quit and was allowed to return to the program, the Refusal to Participate would not be taken back this time.

On July 17, 2007 Inmate Rivers was informed of the Drug Program Supervisor's decision not to allow him to return in this Crime Bill class.

Every effort was made to assist Inmate Rivers to complete the program. All HCU (Health Care Unit) profiles were honored. **Inmate Rivers is the one that signed a Refusal to Participate in the program he was not terminated.**

Inmate Frederick Rivers claims discrimination because he was dismissed from Crime Bill in February 2007 for staff write-ups and returned to the program in July 2007. He further states that Inmate Jerry Michael Macon received the same write-ups and was allowed to continue in the program. **This is an untrue accusation.**

Inmate Jerry Macon was suspended from Crime Bill on January 29, 2007 for receiving his third write-up. This write-up was for Rule #26, "Disturbing or disruptive behavior" as evidenced by Inmate Macon getting out of the Prospect Chair assigned by staff, throwing his sign and stating, "This program is not for me, it is for a young man." His first write-up was for Rule #26, "Disturbing or

Page 7
Affidavit – Connie Bedsole

disruptive behavior" evidenced by his stating to the Crime Bill staff aide, "Write it up", on January 4, 2007.  His second write-up was issued on January 12, 2007 for Rule #29, "Negative attitude."  Inmate Macon was allowing other inmates not to make their assigned announcements and giving them credit for making the announcements.

On July 13, 2007 inmate Jerry Macon was allowed to return to Crime Bill in Phase II, just as Inmate Frederick Rivers.

There was no discrimination made between these inmates.  Both inmates were suspended from the program due to their behavior and both inmates were allowed to return to the program in July of 2007 when Phase II of Crime Bill started.

A copy of the Crime Bill Program Rules and Regulations is attached.

The above-related facts are the entirety of my involvement with inmate Frederick Rivers regarding these allegations.   I deny that I have violated any of his constitutional rights.

_Connie Bedsole_ 2/5/08
Connie Bedsole    Date

STATE OF ALABAMA )

BARBOUR COUNTY )

SWORN TO AND SUBSCRIBED BEFORE ME THIS 5th DAY OF _Feb._ 2008.

_Reba J Currie_
Notary Public
My Commission Expires: 9-8-08

# NEW FREEDOM CRIME BILL PROGRAM RULES AND REGULATIONS

1. THE DRUG PROGRAM SUPERVISOR AND/OR THE SPECIALIST WILL GIVE THIS ORIENTATION TO ALL INMATES UPON ENTERING THE VENTRESS DRUG TREATMENT PROGRAM, NEW FREEDOM CRIME BILL.

2. ALL INMATES MUST SIGN A CONTRACT BEFORE ENTERING TREATMENT. ANY VIOLATION OF THE CONTRACT WILL BE GROUNDS FOR TERMINATION.

3. THIS DRUG PROGRAM WILL LAST A MINIMUM OF 6 MONTHS. IN ORDER TO GRADUATE, AN INMATE MAY NOT MISS MORE THAN FIVE (5) CLASS DAYS DURING ANY ONE PHASE OF TREATMENT.

4. UPON COMPLETION OF THE PROGRAM, CLASSIFICATION WILL BE NOTIFIED THAT THE INMATE HAS SUCCESSFULLY COMPLETED THE CRIME BILL TREATMENT PROGRAM.

5. MEDICATIONS FOR CRIME BILL INMATES WILL BE DISTRIBURTED AT THE DISCRETION OF THE HEALTH CARE UNIT. SUCH DISTRIBUTION IS NOT AFFECTED BY DRUG TREATMENT.

6. DURING PHASE ONE ALL INMATES IN THE CRIME BILL PROGRAM WILL BE PHYSCALLY SEPERATED FROM ALL OTHER POPULATION, EXCEPT DURING YARD TIME, PILL CALL, AND VISITATION. THEY WILL ONLY COMMUNICATE WITH OTHER INMATES IN THEIR CLASS IN ORDER TO INSURE CONFIDENTIALITY TO ALL PARTICIPANTS. DURING PHASE ONE, INMATES ARE NOT TO GO TO THE OTHER SIDE OF THE DORM AT ANY TIME. INMATES MUST STAY IN THE DORM AND IN THEIR ASSIGNED AREA WHEN NOT IN CLASS OR OTHER PROGRAM ACTIVITIES.

7. DURING PHASE I OF THIS CRIME BILL PROGRAM, ALL INMATES WILL WAKE UP AT 3:30 AM AND REMAIN UP UNTIL 7:00PM (MONDAY-FRIDAY). SHOWER TIME IS 4:30PM UNTIL 9:30 PM. DURING PHASE II AND PHASE III OF THIS TREATMENT PROGRAM, INMATES WILL WAKE UP AT 5:30AM AND REMAIN UP UNTIL 3:30PM (MONDAY-THURSDAY). SHOWER TIME IS 4:30PM UNTIL 9:30 PM. INMATES MAY SIT ON THEIR BUNKS WHEN NOT IN STRUCTURED ACTIVITIES.

8. WHILE CRIME BILL INMATES ARE NOT REQUIRED TO GO TO BREAKFAST, ALL DRUG TREATMENT INMATES WILL GO TO ALL OTHER MEALS TOGETHER. ALL INMATES ARE TO GO TO THE STORE TOGETHER.

9. THE USE OF ALL TOBACCO PRODUCTS (SMOKING, DIPPING AND CHEWING) IS CONFINED TO THE YARD BY ORDER OF THE D.O.C. COMMISSIONER. NO TOBACCO OR REFRESHMENT PRODUCTS ARE PERMITTED DURING GROUP. VIOLATORS WILL BE TERMINATED.

10. ONLY ASSIGNED INMATES WILL BE ALLOWED TO OPERATE EQUIPMENT SUCH AS T.V., VCR, RECORDERS OR CASSETTE PLAYERS, ETC.

11. ALL INMATES WILL KEEP THEIR LIVING AREA IN ORDER AT ALL TIMES. MAINTENANCE AND CLEANLINESS IS THE ODER OF THE DAY. (SEE ILUSTRATION OF CORRECT BED ARRANGEMENT POSTED ON BULLETIN BOARD). NOTHING MAY BE

PLACED; STORED OR KEPT UNDER THE MATTRESS. IT IS A VIOLATION OF THE FIRE CODE.

12. DURING PHASE ONE ALL CRIME BILL INMATES WILL BE ON A SERVICE CREW WITH A ROTATING ROSTER FOR DORM CLEANING. DURING PHASE II AND PHASE III OF TREATMENT ALL INMATES WILL BE PLACED ON A STRUCTURE JOB.

13. INMATES MUST ATTEND ALL SCHEDULED MEETINGS AND ACTIVITIES AND BE ON TIME.

14. DURING PHASE I, ALL INMATES WILL BE PROPERLY GROOMED, HAVING SHIRTS BUTTONED, BOOTS OR SHOES TIED, AND COLLARS TURNED DOWN, FROM 5:00AM UNTIL 7:00PM (MONDAY-FRIDAY), EXCEPT ON THE YARD FOR RECREATION. NO FLIP-FLOPS OR SHOWER SHOES. UNALTERED T-SHIRTS MAY BE WORN DURING YARD ACTIVITIES AND ARE PERMITTED IN GROUP DURING THE SUMMER SEASON. NO CAPS OR HATS WILL BE WORN IN THE DORM. AT ANY TIME. DURING PHASE II AND PHASE III, INMATES MUST FOLLOW THE ABOVE DIRECTIONS BETWEEN 6:00AM UNTIL 3:30 PM. NO SAGGING AT ANY TIME.

15. NO INMATE MAY LEAVE THE TREATMENT DORM WITHOUT THE APPROVAL OF A COUNSELOR OR THE PROGRAM SPECIALIST. THIS INCLUDES LOITERING IN THE LOBBY, AROUND THE CUBICLE, OR OTHER OFFICES. INMATES ARE NOT TO TALK TO THE OFFICERS IN THE CUBE UNLESS DIRECTED TO DO SO BY THE STAFF. IN PHASE II AND PHASE III INMATES MAY NOT LEAVE THE DORM FOR ANY REASON WITHOUT PERMISSION FROM STAFF, THE INTERN, THE STAFF AIDE OR THE ASSISTANT STAFF AIDE.

16. DURING PHASE I, INMATES WILL BE ALLOWED ONE PHONE CALL ON SATURDAYS AND ONE PHONE CALL ON SUNDAYS FROM 8:00AM TO 10:00PM. THERE WILL BE A 15-MINUTE TIME LIMIT ON ALL CALLS. DURING PHASE II AND PHASE III OF TREATMENT, INMATES IN THE DRUG TREATMENT PROGRAM MAY USE THE PHONE AT ANY TIME OTHER THAN WHEN IN A STRUCTURED ACTIVITY.

17. DURING PHASE I, ALL INMATES WILL DRAW FROM THE STORE ONCE A WEEK. THEY MAY DRAW $50 ONLY. ALL INMATES MUST TURN STORE SLIPS IN AT BREAKFAST ON THURSDAY MORNING. ONLY INMATES DRAWING STORE SHOULD REPORT WHEN STORE IS CALLED.

18. DURING PHASE I NO READING MATERIALS, RADIOS, GAMES, HOBBYCRAFTS, ETC, WILL BE ALLOWED IN THE DORM. ONLY A BIBLE, KORAN, OR OTHER SACRED TEXT, A DICTIONARY, AND MATERIALS PROVIDED BY THE PROGRAM WILL BE ALLOWED. DURING PHASE II AND PHASE III OF CRIME BILL THE ABOVE MATERIALS MAY BE BROUGHT INTO THE DORM WITH THE EXCEPTION OF PORNOGRAPHIC MATERIALS OR HOBBYCRAFT.

19. VISITATION RULES ARE SET BY THE WARDEN AND WILL REMAIN THE SAME FOR ALL INMATES VISITATION RULES ARE NOT AFFECTED BY DRUG TREATMENT.

20. DURING PHASE I, INMATES IN THE CRIME BILL PROGRAM MAY USE THE LAW LIBRARY FROM 8:00 AM-4: 00PM EACH SATURDAY. INMATES MAY CHECK OUT TWO LAW BOOKS TO TAKE TO THE DORM. INMATES MAY USE THESE BOOKS FOR THEIR LEGAL WORK AND MUST RETURN THEM TO THE LAW LIBRARY ON TUESDAY AT 12:30 P.M. DURING PHASE II AND PHASE IIIOF THIS DRUG TREATMENT PROGRAM INMATES MAY USE THE LAW LIBRARY AT ITS REGULARLY SCHEDULED HOURS, UNLESS IN A STRUCTURED ACTIVITY INMATES MUST NOT LET THEIR LEGAL MATTERS INTERFERE WITH THEIR WORK DURING TREATMENT. IF NECESSARY, HE MAY NEED TO FINISH HIS

LEGAL WORK BEFORE COMING INTO DRUG TREAMENT. THE CRIME BILL PROGRAM IS VERY INTENSE AND HE WILL NOT GET MAXIMUM BENEFIT IF HE IS PREOCCUPIED WITH OTHER MATTERS.

21. DURING PHASE I ALL INMATES IN THE CRIME BILL PROGRAM WILL RAISE THEIR HANDS AND BE CALLED ON BEFORE COMMENTING ON ANY MATTERS BEING DISCUSSED. DURING PHASE II AND PHASE III OF TREATMENT SPONTANEOUS DISCUSSION WILL BE USED IN GROUP.

22. ALL MAIL FROM DORM 9B WILL BE PLACED IN THE MAIL BOX, IN FRONT OF THE CHOW HALL, EACH MORNING AT BREAKFAST ONLY. EACH INMATE WILL MAIL THEIR OWN LETTERS.

23. DURING PHASE I, INMATES IN THE CRIME BILL PROGRAM WILL BE ALLOWED TO WATCH TV ON SATURDAYS ACCORDING TO THE FOLLOWING SCHEDULE: 11:00AM-6:00 PM SPORTS, 6:00PM-10:00PM MOVIES, 10:00PM-10:30PM NEWS. ON SUNDAYS THE SAME SCHEDULE WILL BE FOLLOWED WITH THE EXCEPTION OF QUIET TIME WHICH BEGINS AT 8:00 PM. THE DRUG PROGRAM SUPERVISOR MAY GRANT PERMISSION FOR OTHER VIEWING TIMES OR HE MAY TAKE THE PRIVILEGE AT ANY TIME. DURING PHASE II AND PHASE III, T.V. MAY BE VIEWED AS FOLLOWS: 4:30PM-10:00PM (MONDAY-THURSDAY), 4:00PM-2:00AM (FRIDAY), 8:00AM-2:00AM (SATURDAY), 8:00AM-10:30PM (SUNDAY). THE FRONT T.V. WILL BE FOR MOVIES AS VOTED. THE BACK T.V. WILL BE USED FOR NEWS, SPORTS, AND WEATHER AS VOTED, IF AVAILABLE.

24. NO INMATE IS ALLOWED TO LOAN ANYTHING FOR PROFIT OR SELL ANYTHING TO ANOTHER INMATE. NO INMATE WILL BE ALLOWED TO RUN A STORE IN THE DORM.

25. ANY INMATE IN THE CRIME BILL PROGRAM MAY PUT IN A WRITTEN REQUEST AT ANY TIME CONCERNING ANY MATTER. INMATES MUST USE THE CHAIN OF COMMAND WHEN DEALING WITH THESE ISSUES (FOR EXAMPLE: DRUG TREATMENT ISSUES SHOULD BE ADDRESSED THROUGH THE COUNSELOR, TO THE SPECIALIST THEN TO THE DRUG PROGRAM SUPERVISOR).

26. ALL INMATES IN THE CRIME BILL PROGRAM WILL AVOID ALL BEHAVIORS THAT ARE DISTURBING OR DISRUPTIVE TO OTHER INMATES OR STAFF. NO PROFANITY WILL BE ALLOWED AT ANY TIME. THIS INCLUDES RUNNING IN THE DORM, COMMUNICATING OUT THE WINDOWS, HORSEPLAYING, ETC.

27. ANY INMATE IN THE CRIME BILL PROGRAM WHO IS CAUGHT STEALING OR HAS IN HIS POSSESSION ANY OTHER INMATE'S MATERIALS OR PERSONAL ITEMS WILL BE AUTOMATICALLY TERMINATED FROM THE PRORGAM AND WILL RECEIVE A MAJOR DISCIPLINARY.

28. ALL INMATES ARE TO BE HONEST ABOUT ALL MATTERS THAT RELATE TO THEM AS PARTICIPANTS IN THE CRIME BILL PROGRAM AND MUST CONFORM TO TREATMENT OR FACE DISMISSAL.

29. ANY INMATE WHO CONTINUALLY MAINTAINS A NEGATIVE ATTITUDE, WHO FAILS TO COOPERATE OR CONFORM TO THE TREATMENT PROCESS WILL BE COUNSELED. IF IMPROVEMENT IS NOT MADE IMMEDIATELY, HE WILL BE TERMINATED.

30. ALL INMATES IN CRIME BILL WILL KEEP UP, SECURE, AND PROTECT ALL MATERIALS RELATED TO TREATMENT. HE WILL NOT GRADUATE IF ANY MATERIALS ARE LOST,

ABUSED, OR WRITTEN ON WITHOUT PERMISSION. (NO MATERIALS SHOULD LEAVE THE DORM AT ANY TIME).

31. ANY INMATE WHO IS WRITTEN UP THREE TIMES IN ANY PHASE FOR RULE VIOLATIONS WILL AUTOMATICALLY BE TERMINATED.

32. ANY SEXUAL EXPRESSIONS OR SEXUAL ACTING OUT WITH ANY OTHER PERSON WILL RESULT IN IMMEDIATE TERMINATON FROM THE PROGRAM AND COULD RESULT IN A MAJOR DISCIPLINARY.

33. AT THE DISCRETION OF DRUG PROGRM SUPERVISOR, AN INMTE WILL BE TERMINATED, IF DISCIPLINARY ACTION (INCLUDING A BEHAVIOR CITATION) IS BROUGHT AGAINST HIM WHILE HE IS IN TREATMENT. HOWEVER, A DISCIPLINARY OR A BEHAVIOR CITATION FOR INSUBODINATION, FAILURE TO OBEY A DIRECT ORDER, OR BEING IN AN UNUTHORIZEDAREA WILL RESULT IN IMMEDIATE TERMINATION.

34. DURING PHASE I INMATES WILL CONTINUE TO RECEIVE PERSONAL MAIL. THEY ARE PROHIBITED ACCESS TO NEWSPAPERS, MAGAZINES, OR OTHER NON-TREATMENT LITERATURE. WHEN THESE ARE SENT IN, THE COUNSELOR OR SPECIALIST WILL LOCK THEM UP WITH PROPER LABELS IN THE PERSONAL EFFECTS CLOSET, TO BE RETURNED IMMEDIATELY AFTER COMPLETION OR TERMINATION FROM THE PROGRAM. DURING THE LAST FOUR MONTHS OF TREATMENT, INMATES MAY RECEIVE ALL PERSONAL MAIL. ALL PORNOGRAPHIC MATERIAL MUST BE TURNED IN TO STAFF.

35. TREATMENT WRITE-UPS WILL BE USED IN PHASES ONE. TAGS AND TREATMENT WRITE-UPS WILL BE USED IN PHASE TWO AND THREE. ONLY ASSIGNED INMATES WILL BE ALLOWED TAG PRIVILEGES.

36. ALL PAPERS HANDED IN (HOMEWORK, LEARNING EXPERIENCES, SEMINARS, ETC.) WILL BE PROPERLY HEADED WITH (NAME, BED NUMBER, COUNSELOR'S NAME, AND DATE IN THE LEFT HAND MARGIN). SUBJECT AND TITLE APPEAR IN THE RIGHT HAND MARGIN. HOMEWORK AND LEARNING EXPEREINCES WILL BE DUE THE FOLLOWING DAY BY 8:00 A.M. HOMEWORK AND LEARNING EXPERIENCES DONE OVER THE WEEKEND WILL BE DUE THE FOLLOWING MONDAY AT 8:00 A.M. ALL INMATES IN THE CRIME BILL PROGRAM MUST COMPLETE ALL THEIR READING AND WRITING ASSIGNMENTS IN A TIMELY MANNER.

37. DURING LEVEL ONE, QUIET TIME BEGINS AT 8:00PM SUNDAY-FRIDAY. DURING LEVELS TWO AND THREE, QUIET TIME BEGINS AT 10:30 PM-5: 30 AM WEEKNIGHTS AND 2:00AM ON WEEKENDS AND HOLIDAYS. THERE WILL BE NO MOVING AROUND THE DORM DURING QUIET TIME, EXCEPT TO GO TO THE RESTROOM.

38. ALL INMATES IN THE CRIME BILL PROGRAM WILL TURN IN A MONTHLY ONE-PAGE SELF-EXAMINATION.

39. INMATES ARE NOT TO QUESTION OR COMMENT ON ANY STAFF DECISION.

40. ALL INMATES WILL HAVE THE OPTION TO REFUSE THE PRORAM AT ANY TIME WITHIN THE FIRST (3) DAYS OF ENTRY; BUT, ON THE FOURTH DAY, TREATMENT BECOMES THE INMATES' JOB ASSIGNMENT AND THEREFORE DISCIPLINARY ACTION WILL BE BROUGHT FOR ANY REFUSAL. A REFUSAL MUST BE SIGNED IF AN INMATE QUITS THE PROGRAM.

41. ANY INMATE COMMUNICATING WITH NON-RESIDENTS WHO ENTER THE DORM WILL RECEIVE A WRITE UP.  EXCEPTIONS ARE MAINTENANCE, SEG RUNNERS, AND TRASH DISPOSAL.

42. ALL INMATES ARE TO BE CONSIDERATE AND RESPECTFUL OF THE RIGHTS OF BOTH FELLOW INMATES AND STAFF.THE USE OF NEGATIVE LANGUAGE OR EXPLICT LANGUAGE TO ANY STAFF MEMBER OR CORRCETIONAL OFFICER IS PROHIBITED.

43. ALL INMATES WILL OBEY ALL HOUSE RULES.

44. ANY INMATE WHO VERBALLY THREATENS, INTIMIDATES OR ENGAGES IN A PHYSICAL CONFRONTATION WITH ANY OTHER INMATE WILL BE TERMINATED FROM THE CRIME BILL PROGRAM.

45. ALL INMATES ARE  REMINDED THAT IN ADDITION TO THESE RULES, THEY ARE ALWAYS ACCOUNTABLE TO THE RULES AND REGULATIONS FOUND IN THE INMATE INSTITUTIONAL HANDBOOK.

APPROVALS: _Darrell Parker_____ _6/14/02_
                        WARDEN II                            DATE

_____ _6-14-02_
                              WARDEN III                      DATE

_____ DOC CADT _6/13/02_
DRUG PROGRAM SUPEVISOR  CCSAP        DATE

THESE RULES SUPERSEDE ALL PREVIOUS RULES FOR THE CRIME BILL SUBSTANCE ABUSE PROGRAM.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FREDERICK RIVERS, #148197    )
    )
    Plaintiff,    )
    )
vs.    )  CIVIL ACTION NO. 2:08-CV-24-WKW
    )
CONNIE BEDSOLE, et. al.,    )
    )
    Defendants.    )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said County
and State of Alabama at Large, personally appeared one Rebecca Pittman, who
being known to me and being by me first duly sworn, deposes and says on oath
as follows:

My name is Rebecca Pittman, and I am presently employed as a
Classification Supervisor, with the Alabama Department of Corrections at the
Ventress Correctional Facility in Clayton, Alabama.  I am over the age of twenty-
one (21).

Plaintiff, in his response states that he is being discriminated against racially.
He states he was dismissed from Crime Bill in February of 2007 for staff write
ups but allowed to return on 7-15-07 to the program.  He states that Inmate Jerry



Page 2
Affidavit – Rebecca Pittman

Michael Macon, W/M, #247521 received the same type staff write ups and was allowed to continue in the program.

Plaintiff further alleges that due to the fact of being put out of the program, he was denied placement of less restrictive facility and denied less intense program regardless of health problems which could be life threatening.

Inmate Frederick Rivers has failed to complete the court ordered program, which indicates his unwillingness to address the issue(s) that brought him to prison. Inmate Rivers could be recommended once there is substantial evidence that he is addressing those issues.

Inmate Rivers was recommended for the Supervised Early Release Program on October 1, 2007. As Classification Supervisor, I do not have any input as to what the SREP Board will decide based on Inmate Rivers' refusal to address the issues that led to his incarceration.

The above-related facts are the entirety of my involvement with inmate Frederick Rivers regarding these allegations.   I deny that I have violated any of his constitutional rights.

_Rebecca Pittman_ 1-18-08
Rebecca Pittman    Date

Page 3
Affidavit – Rebecca Pittman


STATE OF ALABAMA )

BARBOUR COUNTY  )

SWORN TO AND SUBSCRIBED BEFORE ME THIS _18th_ DAY OF JANUARY,

2008.

_Reba D Currie_
Notary Public
My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FREDERICK RIVERS, #148197    )
                                )
          Plaintiff,          )
                                )
vs.                           )  CIVIL ACTION NO. 2:08-CV-24-WKW
                                )
CONNIE BEDSOLE, et. al.,     )
                                )
          Defendants.     )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared one J. C. Giles, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is J. C. Giles, and I am presently employed as a Correctional Warden III, with the Alabama Department of Corrections at the Ventress Correctional Facility in Clayton, Alabama. I am over the age of twenty-one (21).

Plaintiff, in his response states that he is being discriminated against racially. He states he was dismissed from Crime Bill in February of 2007 for staff write ups but allowed to return on 7-15-07 to the program. He states that Inmate Jerry Michael Macon, W/M, #247521 received the same type staff write ups and was



Page 2
Affidavit – J. C. Giles

allowed to continue in the program.

Plaintiff's allegations are unfounded and untrue. According to the paperwork of the Drug Treatment Program, every effort was made to allow Inmate Frederick Rivers to complete the Substance Abuse Program but he kept refusing and quitting the program.

Plaintiff further alleges that due to the fact of being put out of the program, he was denied placement of less restrictive facility and denied less intense program regardless of health problems which could be life threatening.

Inmate Frederick Rivers has failed to complete the court ordered program, which indicates his unwillingness to address the issue(s) that brought him to prison. Inmate Rivers could be recommended once there is substantial evidence that he is addressing those issues.

Inmate Rivers was recommended for the Supervised Early Release Program on October 1, 2007.

Inmate Rivers did not send me a request slip or ask to talk to me about any problems he was having in the Crime Bill Programs. I am confident that my staff abides by the rules and regulations of the Crime Bill Program and every effort was made to help Inmate Rivers complete the program so he could have the opportunity to be released.

Page 3
Affidavit – J. C. Giles

The above-related facts are the entirety of my involvement with inmate

Frederick Rivers regarding these allegations.   I deny that I have violated any of

his constitutional rights.

_J. L. Giles_  2-5-08
J. C. Giles        Date

STATE OF ALABAMA )

BARBOUR COUNTY  )

SWORN TO AND SUBSCRIBED BEFORE ME THIS 5th DAY OF FEBRUARY,

2008.

_Debra J Currie_
Notary Public
My Commission Expires: 9-8-08